## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERNEST JOSEPH DAVIS,

        *Plaintiff*,

*v.*

MIKE COX, PATRICIA CARUSO,
NORMA KILLOUGH, NICK
LUDWICK, DANIEL BIERSTETEL,
WAYNE GROAT, BRENDA
HOLLAND, and KRISTIN
VAN HAFTEN,

        *Defendants*.

_____/

CASE NO. 2:18-cv-11255
DISTRICT JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (R. 23, 35) AND PLAINTIFF'S MOTION TO COMPEL (R. 38) AND MOTION TO STRIKE (R. 37)

## I.    RECOMMENDATION

Plaintiff Ernest Davis is currently incarcerated in the Michigan Department of Corrections (MDOC) system. This case involves his claims, brought under 42 U.S.C. §§ 1983 and 1985, alleging that several MDOC employees and officials, as well as former state attorney general Mike Cox, conspired to snatch his legal papers and snuff out an earlier lawsuit he had filed against state officials and employees. (R. 1, ID.47-57.)[1] Before

---

[1] Pursuant to 28 U.S.C. § 636(b)(1), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to me for all pretrial proceedings, including determinations of non-dispositive matters and reports and recommendations on dispositive matters. (R. 10.)

the Court are four motions: (1) defendants Cox, Bierstetel, and Holland's motion for summary judgment, (R. 23); (2) defendants Caruso, Killough, and Van Haften's motion for summary judgment, (R. 35); (3) Plaintiff's motion to compel a non-party to respond to his interrogatories and requests for documents, (R. 38); and (4) Plaintiff's motion to strike Defendants' motions for summary judgment (including specific exhibits to the motions), (R. 37). For the reasons below, I **RECOMMEND** that Defendants' motions for summary judgment (R. 23, 35) be **GRANTED** on the ground that Plaintiff's claims are barred by the statute of limitations, and that Plaintiff's motions be **DENIED** as moot.

## II.    **REPORT**

### A.    **Facts**

The tale of Plaintiff's current claims begins with a prior lawsuit that he filed in November 2009 against then-Governor Jennifer Granholm and various MDOC employees. (R. 1, ID.46.) In January 2010, that case was docketed and the complaint served, Plaintiff claims. (*Id.*) About a month later, on February 20, 2010, defendant Killough ordered the confiscation of Plaintiff's legal papers. (*Id.*) This was accomplished the next day by dragging Plaintiff to segregation, then plucking his papers. (R. 1, ID.46-47.) He was told that defendant Van Haften had instructed the guards to hand over the papers to defendant Bierstetel, who was in Plaintiff's cell rifling through his possessions for legal documents. (*Id.*) During the episode, one of the guards asked Plaintiff, "who in the hell did you file as [*sic*] suit against and piss off?" (R. 1, ID.47.) All told, defendants took three large envelopes containing court filings, affidavits, pleadings, motions, proposed orders, notes, legal

treatises, and other sundry materials. (R. 1, ID.47-48.)

While these events occurred, Plaintiff was given a "Notice of Intent" telling him that a hearing would be held about his seized property, and later he received a major misconduct ticket for having matches hidden in his typewriter. (*Id.*) This allegation—a false one, says Plaintiff—extended his stay in segregation, as he was eventually found guilty of the misconduct by defendant Holland. (R. 1, ID.47-49, 78.)

Stuck in the segregation unit, he made repeated demands that the materials be returned, to no avail. (R. 1, ID.47, 49-50.) On February 22, the day after the seizure, an unknown guard told him the requests should be made to the second-shift staff. (R. 1, ID.49.) The same day, a second-shift employee promised to investigate the matter. (*Id.*) Another second-shift guard told him the same thing the following day. (*Id.*) A few days later Plaintiff attempted to resolve the issue, but never saw the sergeant whom he needed to speak with. (*Id.*) "Plaintiff requested several grievance forms during second shift but was ignored and/or was informed they were out of grievance forms." (*Id.*)

On March 1 and 2, Plaintiff sent complaints to defendants Ludwick[2] and Caruso concerning his legal papers. (R. 1, ID.49-50.) A couple weeks later, Plaintiff heard the complaints were not well received "and if plaintiff didn't stop complaining he would not have nothing coming, which plaintiff understood to mean get his legal property back." (R.

---

[2] On October 17, 2018, I entered an order explaining that because Ludwick was deceased, Plaintiff had 60 days to move to substitute the proper party. (R. 18, ID.129.) In response, he filed a letter he sent to the probate court asking about Ludwick's estate. (R. 20, ID.132.) To date, however, he has not moved for substitution. Because his claims fail on the merits, I do not address the substitution issue as a separate reason to dismiss.

1, ID.50.)

After more than a month in segregation, Plaintiff was released, though he still had not received his papers or even a hearing on the matter. (*Id.*) He then filed a grievance on April 2, and forwarded defendant Cox a complaint on April 15 (and another in January 2011), but never received a reply. (R.1, ID.52-53.) He followed up with another complaint to defendant Caruso, about a month later, and a letter to defendant Caruso the next month. (*Id.*) Again, no response was made. (*Id.*)

During this time, he continued to ask staff to help him reobtain his papers, and was told they would look into it. (R. 1, ID.52-53.) But nothing was ever done. (*Id.*) Defendant Bierstetel, however, told him the order to snatch his documents came from the "Director's Office" and the Attorney General. (R. 1, ID.53.) Bierstetel said Plaintiff should file another grievance. (*Id.*)

Plaintiff contends that defendants knew of the relevant policy directives and constitutional provisions protecting his right to his legal documents. (R. 1, ID.54.) They had, after all, taken bonded oaths to support the constitution, so they should have known their actions were prohibited. (R. 1, ID.54-55.) Specifically, he puts forward the following legal claims brought under 42 U.S.C. §§ 1983 and 1985: defendants (1) retaliated against him in violation of his First Amendment rights, (R. 1, ID.56-59); (2) denied him due process by failing to hold a hearing on the seizure of his papers, (R. 1, ID.59-60); (3) violated his due-process right to privacy by seizing his papers, (R. 1, ID.60-62); (4) conspired to deprive him of his constitutional rights, (R. 1, ID.62-65); and (5) failed to

discharge their duties as public officials when, acting outside their legal authority, they did not "protect the rights of plaintiff as one of the People of state," (R. 1, ID.65-70).[3]

Based on the above events, Plaintiff sued defendant Caruso and three "John Doe" defendants on June 2, 2010. Compl., *Davis v. Caruso*, No. 10-12178 (E.D. Mich. June 2, 2010). The case was dismissed as frivolous on September 23, 2010. *Davis v. Caruso*, No. 10-12178, slip op. at *6 (E.D. Mich. Sept. 23, 2010).

He then refiled the case on September 1, 2011, adding numerous defendants. Compl., *Davis v. Cox*, No. 11-13818 (E.D. Mich.). The court *sua sponte* dismissed the case under 28 U.S.C. § 1915(g) because Plaintiff sought to proceed *in forma pauperis* but had more than three prior civil rights complaints dismissed as frivolous or for failure to state a claim. *Davis v. Cox*, No. 11-CV-13818, slip op. at *2-3 (E.D. Mich. Nov. 10, 2011). The dismissal was "without prejudice to Plaintiff filing a new complaint with payment of the filing fee." *Id.* at *3.

He filed the same case on January 13, 2014. Compl., *Davis v. Cox*, No. 14-10200 (E.D. Mich.). Again, he sought to proceed *in forma pauperis* and the action was dismissed "without prejudice to Plaintiff filing a new complaint with payment of the filing fee." *Davis v. Cox*, No. 2:14-CV-10200, slip op. at *2-3 (E.D. Mich. Mar. 24, 2014).

His present complaint was filed on April 20, 2018.[4]

---

[3] In a memorandum attached to his complaint, he elaborates on these claims, explaining that his privacy argument is premised on the First, Fourth, Fifth, and Fourteenth Amendments, and that his claim about defendants' breach of duties relies on the First, Fourth, Fifth, Eighth, Ninth, Eleventh, and Fourteenth amendments. (R. 1, ID.80-82.)

[4] Plaintiff sometimes styles his complaint as a "Bill in Equity," and asks the court clerk to file it on the "equitable side of the court." (R. 1, ID.11, 76, 85.) Only "one form of action" exists, however, "the civil

**B.    Defendants' Motions for Summary Judgment**

**1.    Legal Standards**

A Rule 56 motion for summary judgment is the appropriate vehicle to raise affirmative defenses. *See Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016). A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material

---

action," Fed. R. Civ. P. 2, and thus classifying a claim as equitable or the complaint as a bill in equity is unnecessary. *See Adamo v. Romero*, No. 14-0838, 2014 WL 12786901, at *1 n. 1 (D. N.M. Oct. 23, 2014) (rejecting the characterization of a complaint as a bill in equity).

fact exist. *Street*, 886 F.2d at 1479-80. While a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## 2.    Argument and Analysis

Defendants move for summary judgment on two alternative grounds.[5] First, they claim that the statute of limitations bars Plaintiff's case. (R. 23, ID.156-159.)[6] Second, they contend that Plaintiff failed to exhaust his administrative remedies. (R. 23, ID.160-166.) For the reasons below, I conclude that the first argument carries the day and that Plaintiff's complaint is untimely. Because this conclusion disposes of the entire case, I will not

---

[5] The motion by defendants Cox, Bierstetel, and Holland contains the substantive arguments, (R. 23), which are adopted without elaboration by the other Defendants. (R. 35, ID.235.)

[6] Plaintiff filed a sur-reply without obtaining permission as required under ED LR 7.1(c)(3). The Court could ignore it; given Plaintiff's *pro se* status, however, the filing will be considered. *See Hill v. Walker*, No. 13–cv–13097, 2015 WL 5211919, at *8 (E.D. Mich. Aug. 31, 2015).

address the exhaustion argument.

Plaintiff's 42 U.S.C. § 1983 claim requires him to show that Defendants acted under color of state law when they deprived him of a constitutional right. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). The § 1985 claim covers conspiracies to deprive individuals of constitutional rights. *Bowden v. City of Franklin, Ky.*, 13 F. App'x 266, 272 (6th Cir. 2001). Federal law determines when the § 1983 and § 1985 claims accrue, that is, the point at which the limitations period begins to run: when the plaintiff knows or has reason to know that the act providing the basis for his or her injury has occurred. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1984) (§ 1983 claim); *see also Helton v. Clements*, 832 F.2d 332, 334-335 (5th Cir. 1987) (§ 1985 claim).

Here, that would be February 21, 2010, when Plaintiff's papers were taken, and he received a major misconduct ticket for having contraband (matches) hidden in his typewriter. (R. 1, ID.46.) According to his complaint, he learned of the seizure the day it occurred and began demanding the return of his documents the very next day. (R. 1, ID.47.) At this point, he knew or had reason to know of the facts giving rise to his injury. Plaintiff presents no argument to the contrary. Thus, the claim accrued on February 21, 2010—that day, however, is excluded when computing the limitations period. Fed. R. Civ. P. 6(a)(1)(A) (to compute time periods, "exclude the day of the event that triggers the period" when the relevant period is counted in days or a longer unit of time); *see also* Mich. Comp. Laws 8.6 ("In computing a period of days, the first day is excluded."); M.C.R. 1.108(1) (same). So the first day, for statute-of-limitations purposes, was February 22, 2010.

Determining the start date is only the initial step in the statute-of-limitations analysis. The length of the limitations period and any tolling must also be calculated. In these matters, federal law provides no direct answers. "Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980). Nor does § 1985 contain a statute of limitations. *Moore v. Potter*, 47 F. App'x 318, 320 (6th Cir. 2002). Instead, in 42 U.S.C. § 1988, Congress "endorse[d] the borrowing of state-law limitations provisions where doing so is consistent with federal law." *Owens v. Okure*, 488 U.S. 235, 250 (1989). In Michigan, the relevant statute-of-limitations is Mich. Comp. Laws. § 600.5805(2), which provides three years from the date of accrual in which to bring a personal-injury action. *See Hardin v. Straub*, 490 U.S. 536, 540 (1989) (applying § 600.5805(2) in § 1983 action); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (same); *see also Ziegler v. State of Michigan*, 230 F.3d 1361, 2000 WL 1434496, at *1 (6th Cir. 2000) (unpublished) (applying Michigan law and noting that "[t]he statute of limitations for Ziegler's § 1983 and § 1985 claims is three years").

Similarly, state tolling rules apply to § 1983 and § 1985 actions. *McCune v. Grand Rapids*, 842 F.2d 903 (6th Cir. 1988); *Covington v. Winger*, 562 F. Supp. 115, 118 (W.D. Mich. 1983). Relevant here, Mich. Comp. Laws. § 600.5856(a) tolls the statute of limitations when a complaint is filed and is properly served, along with the summons, on the defendants. That statute does not, however, provide for equitable tolling. And "[i]n Michigan, equitable tolling does not exist except as provided by statute." *Citizens Bank v.*

*Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, No. 11–CV–14502, 2012 WL 5828623, at
*8 n. 4 (E.D. Mich. July 6, 2012); *see also Weathers v. Holland Police Dep't*, No.
1:13CV1349, 2015 WL 357058, at *5 (W.D. Mich. Jan. 27, 2015) (agreeing that Michigan
does not recognize common law equitable tolling and stating that "[i]n applying Michigan
law, plaintiff's claim for equitable tolling of the three-year statute of limitations for a §
1983 claim must be based upon a statutory right to tolling").

The limitations period is also tolled while prisoners exhaust their administrative
remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). To measure this type of
tolling, some background about the exhaustion requirement is necessary. Under 42 U.S.C.
§ 1997e(a), "[n]o action shall be brought with respect to prison conditions under [§ 1983]
. . . by a prisoner confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[7] The

---

[7] Suits "brought with respect to prison conditions," § 1997e, encompass "all inmate suits about prison life,
whether they involve general circumstances or particular episodes, and whether they allege excessive force
or some other wrong*." Porter v. Nussle*, 534 U.S. 516, 532 (2002). Prison conditions include being denied
access to legal materials. *Baksi v. Mitchell*, 211 F.3d 1268, 2000 WL 572032, at *1 (6th Cir. 2000).

In this case, Plaintiff challenges a prison condition subject to § 1997e because he contests actions
that deprived him of his legal papers. He tries to escape the strictures of § 1997e by contending that the
statute holds no power over him because "he is not a citizen of the corporate State of Michigan nor [the]
United States." (R. 44, ID.332.) Instead, he simply seeks to "maintain his unalienable rights under the Bill
of Rights." (*Id.) See also* (R. 1, ID.1-6 ("Plaintiff is the registered Name Holder/Sole Beneficiary of the
legal entity/fiction name ERNEST DAVIS"; "Plaintiff is doing business under assume/fiction name
ERNEST DAVIS"; "plaintiff is not a citizen of STATE OF MICHIGAN or UNITED STATES, INC.";
"plaintiff is in fact, an American State National by birth and by right, Identification Card is available for
review upon request"; and "plaintiff in fact, is lawful holder of 'ALL' right, title, and interest on the trust
name: ERNEST DAVIS, being held by the Michigan Department of Corrections . . . and holds priority right
of claim on Estate for ERNEST DAVIS as lawfully recorded within the Office of the Minnesota Secretary
of State.").)

These statements smack of the skimble-scamble theories rampant among sovereign citizens. *See*
Jessica K. Phillips, *Not All Pro Se Litigants are Created Equally: Examining the Need For New Pro Se
Litigant Classifications Through the Lens of the Sovereign Citizen Movement*, 29 Geo. J. Legal Ethics 1221,
1226 (2016) (discussing the underlying theories); *see also Adkins v. Kentucky*, No. 3:18-mc-26-DJH, 2018

remedies must be "properly" exhausted, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means the prisoner must comply with the prison's grievance process, *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Here, then, MDOC's regulations govern exhaustion. Examining these rules is necessary to discern which of Plaintiff's series of complaints counted towards proper exhaustion, thus tolling the limitations period, and which did not.

MDOC requires prisoners with grievances "to attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue," unless certain circumstances apply. MDOC PD 03.02.130(P) (eff. 7/9/2007). Within five days of attempting to resolve the issue, the prisoner must file the Step I grievance in writing using a specific form. MDOC PD 03.02.130(P), (R), (V). It must be sent to the Step I Grievance Coordinator of the "facility, field office, or other office being grieved," or if no such person exists, then the Step I Grievance Coordinator where the prisoner is held. MDOC PD 03.02.130(V). If the prisoner is dissatisfied with the response, or does not receive a timely response, a Step II appeal form must be obtained and sent to

---

WL 6528462, at *1 (W.D. Ky. Dec. 12, 2018) (rejecting arguments from a self-reported American State National as frivolous sovereign citizen claims). Courts routinely find claims like these to be bunk. *See Payne v. Kilda*, No. 15–cv–14127, 2016 WL 491847, at *3-4 (E.D. Mich. Jan. 6, 2016).

Such is the case here. If Plaintiff was a prisoner complaining of prison conditions when he filed suit, 42 U.S.C. § 1997e(a) applied; he was, so it did. *See Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) ("Because he was clearly a 'prisoner' at the time he filed suit, Napier was subject to the PLRA's requirements."). As for his contention that he is not a United States citizen, that sort of claim has been summarily rejected by courts for years, and should be here as well. *See Bey v. United States*, 1:16–cv–01347–JBM, 2016 WL 5723655, at *2 (C.D. Ill. Sept. 29, 2016) ("[F]or at least 25 years the courts have summarily rejected claims by sovereign citizens. . . . The United States Court of Appeals for the Seventh Circuit has instructed district courts to 'summarily reject' the 'worn argument that a defendant is sovereign.'" (citation omitted)).

the Step II Grievance Coordinator. MDOC PD 03.02.130(BB). The same basic process occurs at the third and final stage: if the prisoner is unhappy with the response, or does not receive one on time, he must complete and send a Step III appeal form to the Grievance and Appeals Section. MDOC PD 03.02.130(FF).

Here, as discussed above, the claim accrued on February 21, 2010, and the first day for computing the limitations period was February 22. *See* Fed. R. Civ. P. 6(a)(1)(A). Without tolling, Plaintiff had three years from that date to bring his action. A few periods of tolling occurred, however, the first during the grievance process. The informal start of the process, under MDOC's rules, is the attempt to resolve the issue with the employee. MDOC PD 03.02.130(P). Plaintiff' Step I grievance form says that he first tried to resolve the issue on March 1, 2010. (R. 1, ID.13.) He waited until nearly a year later to file his Step I grievance, on February 17, 2011. (*Id.*) The process lasted until May 9, 2011, when Plaintiff's grievance was rejected at Step III for being untimely. (R. 13, ID.13-17.) (As shown below, even with the indulgent assumption that tolling began on March 1, 2010, despite Plaintiff's tarrying in filing his Step I form, Plaintiff's complaint is ultimately untimely. Thus, it is unnecessary to determine whether tolling started later, with his Step I filing.)[8]

---

[8] In response to Defendants' exhaustion argument, Plaintiff asserts that he was kept from speaking with various officers and that he repeatedly requested grievance forms, only to be told that none were left. (R. 44, ID.341.) Further, he points to MDOC's admission that it has not retained records from before January 1, 2012, (R. 23, ID.165), although he does not contend that he filed any specific grievance that MDOC failed to keep. Finally, he has included various letters he drafted to defendants Cox and Caruso complaining about the seizure of his papers, along with a Step I grievance form dated April 2, 2010. (R. 44, ID.348-355.)

During this period, Plaintiff's first case came and went. *Davis v. Caruso*, No. 10-12178, slip op. at \*6 (E.D. Mich. Sept. 23, 2010). His second case was filed on September 1, 2011 and dismissed a little over two months later, on November 10, 2011. *Davis v. Cox*, No. 11-CV-13818, slip op. at \*2-3 (E.D. Mich. Nov. 10, 2011).[9] The final case lasted from January 13, 2014 to March 24, 2014. *Davis v. Cox*, No. 2:14-CV-10200, slip op. at \*2-3 (E.D. Mich. Mar. 24, 2014).

With these dates in mind, one can calculate the limitations period as follows: It began on February 22, 2010, and lasted until March 1, 2010, when Plaintiff began the grievance process; it then recommenced on May 9, 2011, lasting for about four months until he filed suit on September 1, 2011. The period started again on November 10, 2011, and ran for about two years and two months up to his lawsuit in January 13, 2014. Finally, the period ran from March 24, 2014, when his most recent case was dismissed, until he filed the present complaint on April 20, 2018, or over four years. All told, then, the period ran for almost seven years prior to his filing the instant complaint, well beyond the three

---

None of these arguments affect the calculation of tolling during the exhaustion process. Regarding the allegations that he was impeded from filing a grievance, tolling occurs only during the course of proper exhaustion, so prior periods would not be included. In any case, the computation above assumes that tolling began when he first sought informal resolution of the matter, about a week after the seizure. Thus, any times during which Defendants prevented him from filing a Step I grievance are already counted as tolled. Regarding MDOC's record keeping, Plaintiff does not contend that MDOC destroyed specific records from an additional grievance process that occurred outside the already tolled period. As for the letters to Cox and Caruso, those were not part of MDOC's formal grievance procedure. *See* MDOC PD 03.02.130(V), (BB), (FF) (requiring grievances be sent to specified individuals). Regardless, they were sent during a period that already was tolled, as was the April 2010 Step I grievance form, which apparently was never processed as the "response" section is blank and no follow-up paperwork appears in the record.

[9] Recall that, for tolling to occur, § 600.5856(a) requires that the complaint and summons be properly served on the defendants. It is unclear whether that service took place, as Plaintiff's complaints in those cases were *sua sponte* dismissed at the screening stage. Even if it did, Plaintiff's present complaint is untimely. Thus, I will assume that the limitations period remained tolled during the prior cases.

years provided by the statute of limitations, Mich. Comp. Laws. § 600.5805(2).

Plaintiff pins his hopes on equitable tolling, arguing that the court should toll the limitations period because the dismissal orders in his prior cases led him to believe he could refile whenever he could pay the court fees. (R. 44, ID.334-336.) He says that the court in 2011 "fashioned his order [dismissing the case] instructing this plaintiff whenever he got the funds plaintiff could bring the claim back into this court, which plaintiff understood this order to be an equitable tolling." (R. 44, ID.334; *see also* R. 50, ID.464-465.) He tried filing the case within the limitations period, he adds, and his inability to pay the filing fee was apparently related to MDOC having down-sized and laid off employees. (R. 44, ID.335.)[10] As noted above, however, equitable tolling is unavailable to him. *See Citizens Bank*, 2012 WL 5828623, at *8 n. 4.[11] Thus, Plaintiff's argument fails, and his complaint remains untimely.

---

[10] He adds that allowing poverty to bar him from court "would not only burden plaintiff but prevent him from presenting constitutional challenges in federal court in violation of the Bill of Rights." (R. 44, ID.335.) No argument is developed on this point, however. And the "three-strikes" provision, 28 U.S.C. § 1915(g), which prevented Plaintiff from proceeding *in forma pauperis*, has been upheld as constitutional. *See Wilson v. Yaklich*, 148 F.3d 596, 605 (6th Cir. 1998) (rejecting various constitutional arguments against the provision, including that it interfered with the right to access courts).

[11] Even if the federal standard for equitable tolling applied, Plaintiff would still lose. Under that standard, an "extraordinary circumstance" must have prevented Plaintiff from timely filing. *McClure v. City of Detroit*, No. 11–CV–12035–DT, 2015 WL 224744, at *5 (E.D. Mich. Jan. 15, 2015) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)). No extraordinary circumstance is apparent here. Plaintiff offers only that he may have misread the previous dismissal orders, both of which said the dismissal was "without prejudice to Plaintiff filing a new complaint with payment of the filing fee." *Davis v. Cox*, No. 2:14-CV-10200, slip op. at *3 (E.D. Mich. Mar. 24, 2014); *Davis v. Cox*, No. 11-CV-13818, slip op. at *3 (E.D. Mich. Nov. 10, 2011). The orders cannot be read to allow Plaintiff to refile past the limitations period. Nor were they ambiguous enough to foster a reasonable belief the limitations period was tolled. And a bare misreading is not so extraordinary as to justify tolling.

14

C.      **Plaintiff's Motions**

The only pending matters are Plaintiff's motion to compel and motion to strike. (R. 37, 38.) Because Defendants are entitled to summary judgment, these motions are moot. Out of an abundance of caution, however, I will examine them. This is the safe course because, if the case is not dismissed on statute-of-limitations grounds, Plaintiffs' motions are potentially relevant: they involve discovery matters and could (theoretically) demonstrate that Defendants' motions for summary judgment are premature, *i.e.*, establish that more evidence is needed to adequately address the dispositive motions (which here would focus on the exhaustion argument, if the statute-of-limitations argument is rejected). *See* Fed. R. Civ. P. 56(d). Plaintiff fails to make that showing, however, and his motions ultimately can be denied as moot (because as explained above Defendants are entitled to summary judgment), or alternatively denied on the merits.

The first motion is Plaintiff's request to compel John Roth, a non-party portfolio manager at Fidelity Investments, to answer interrogatories and produce documents. (R. 38.)[12] Roth's potential involvement in this case depends on the relevance of a story Plaintiff

---

[12] Another non-party pops up at the end of Plaintiff's memorandum supporting his motion: Plaintiff requests the Court "to grant his motion to compel discovery against John Roth and Fidelity Investments just in case they've recently transferred Roth to another department." (R. 38, ID.276.) The motion, however, does not seek to compel any discovery from Fidelity Investments. In any case, even if Fidelity were included, the motion would still fail for all the reasons above.

Additionally, it appears that Plaintiff renews his request to seal the case, saying "Plaintiff abate this court's order dated October 17, 2018 denying his motion to seal this case as point -3, plaintiff invokes his right to privacy, to have his case sealed and/or his Exhibits VI thru X." (R. 38, ID.273.) A discussion of the right to privacy follows this statement. (R. 38, ID.273-275.) Nothing has changed since my earlier order denying the motion to seal, (R. 18), and so if Plaintiff is now renewing that request, it should be denied on the merits; it is also moot, if the case is dismissed as recommended.

15

tells only in his brief accompanying the motion to compel, not in his complaint. According to Plaintiff, before arriving at the facility where his legal papers were confiscated, he learned that "employees of the state of Michigan may have in fact, stolen his identity, purchased securities in his name while receiving benefits, derivatives, and participating in self enrichment." (R. 38, ID.267 (*sic* throughout).)

Defendants' reprisals over Plaintiff's discovery were swift and severe: he received multiple misconduct tickets, was tossed in segregation three times, had his property destroyed, and had his security level heightened. (R. 38, ID.272.) With the help of a stock broker and the Securities and Exchange Commission, Plaintiff discovered that someone had used his personal information to purchase shares of a mutual fund "under plaintiff's private trust 'ERNEST DAVIS TRUST.'" (R. 38, ID.268-269.) The fund's prospectus lists Roth as the manager. (R. 38, ID.269.)

Over three years after uncovering the fund, Plaintiff says he served Roth with interrogatories and requests for documents but never received a response. (R. 38, ID.270.) Thus, he now asks the Court to force Roth's reply, citing variously to Fed. R. Civ. P. 33, 34, and 45. I recommend declining to do so.

Rule 33 is no help to Plaintiff because he seeks answers from a non-party. By its terms, Rule 33 applies only to interrogatories served on a *party*. Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories."). That is why courts have hold that serving interrogatories on a *non-party* is inappropriate. *United States v. One Parcel of Real Prop.*,

128 F.3d 1386, 1397 (10th Cir. 1997); *Ward v. Empire Vision Ctrs., Inc.*, 262 F.R.D. 256, 261 (W.D. N.Y. 2009).[13]

Instead, requests to non-parties generally need a subpoena. *Nationwide Life Ins. Co. v. Keene*, No. 11-12422, 2013 WL 1499525, at *2-3 (E.D. Mich. April 10, 2013); *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 1183686, at *2 (E.D. Mich. April 9, 2012). Rule 34(c) establishes this requirement for requests for documents, stating that "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." *See In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) ("Rule 34(c) explicitly makes the subpoena process of Rule 45 the route to compelling production of documents from nonparties.").

Rule 45, in turn, authorizes parties to obtain signed subpoenas requiring non-parties to attend depositions, permit inspection of premises, or produce tangible objects or documents. "'[T]he reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at *3 (E.D. Mich. 2008) (citation omitted); *see also* Fed. R. Civ. P. 45, cmmt. to 1970 amend. ("The changes make it clear that the scope of discovery through a subpoena is the same as that applicable to

---

[13] The request could be construed as one for "depositions upon written questions" under Fed. R. Civ. P. 31 ("A party may, by written questions, depose any person, including a party, without leave of court except as provided in Rule 31(a)(2)."). *See Watson v. Lowcountry Red Cross*, 974 F.2d 482, 484 n. 3 (4th Cir. 1992) ("Because these 'interrogatories' are directed at a non-party, they are more properly characterized as 'depositions upon written questions.'"). Even so, the request must satisfy Fed. R. Civ. P. 26(b)(1)'s requirement that it be relevant to a claim or defense. For the reasons discussed below, the request flunks this test and is moot anyway.

Rule 34 and the other discovery rules."). This means that parties can use a Rule 45 subpoena to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Plaintiff's request fails for a few reasons. First, to obtain documents or answers from Roth, Plaintiff needed a subpoena. But he does not allege that he obtained or served one. Second, and more fundamentally, the information Plaintiff seeks is irrelevant to his present claims. The complaint alleges a series of events surrounding the seizure of Plaintiff's legal papers. It says nothing about identity theft. According to Plaintiff's motion, the theft preceded the events detailed in the complaint. (R. 38, ID.267.) At best, then, the identity-theft episode might explain why Defendants were out to get Plaintiff, yet he fails to name the thieves, their relation to the present Defendants, or when they stole his identity. What is more, he appears uncertain that MDOC employees were even the culprits, as he repeatedly speculates they "may" have stolen his identity, (R. 38, ID.267, 272), although elsewhere he concludes, without more explanation, that they "had" done the deed, (*id.*). And the facts Plaintiff says he wants to establish through this discovery are unrelated to the complaint:

> Therefore, this discovery is necessary in order to establish plaintiff's facts - that state employees have created a fund in plaintiff's name and continue to this day to receive unlawful enrichments from said fund, and further establish the conspiracy amongst defendants to prevent plaintiff from lawfully discovery their wrong doing prohibited by law. And that John Roth, nonparty to this action holds information and documents which would in fact, support plaintiff's original complaint seized and destroyed by defendants.

(R. 38, ID.272-273.) These facts could be true or untrue without any effect on his present

claims. Thus, the request falls outside the scope of Rule 26.

Third, even if the requested evidence related to Plaintiff's claims, it does not affect the merits of Defendants' motions. Plaintiff does not contend, and I cannot conceive, that any facts Roth could divulge would relate to Defendants' arguments. Consequently, because Defendants are entitled to summary judgment regardless of Plaintiff's discovery request; thus, it is moot. (R. 38.)

For this reason, it would not benefit Plaintiff to construe his motion as falling under Fed. R. Civ. P. 56(d), which appears to best fit the substance of Plaintiff's argument. *See generally Castro v. United States*, 540 U.S. 375, 377 (2003) (permitting courts to recharacterize *pro se* filings to better conform to the substance of the request, if the litigant is given notice beforehand). That rule allows a party opposing a motion for summary judgment to "show by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Upon that showing, the court can defer or deny the motion, allow time for discovery, or take other appropriate action. This rule cannot save Plaintiff's motion because the requested evidence would not establish a genuine issue of material fact regarding Plaintiff's claims or any defenses. Consequently, even under this construction, Plaintiff's motion should be denied as moot.

The same goes for his other motion, which seeks to strike "Elizabeth R. Husa Briggs'[s] Motion for Summary Judgment and Exhibits A-C." (R. 37, ID.239.) Briggs represents all Defendants and filed both motions, although Plaintiff refers only to the one with exhibits, (R. 23); it is unclear if Plaintiff means to strike just that one or both. Either

way, he cannot prevail.

As a threshold matter, a motion to strike is the wrong vehicle for overcoming Defendants' motions. Under the relevant court rule, Fed. R. Civ. P. 12(f), *see Scott v. The Dress Barn, Inc.*, No. 04-1298-T/AN, 2006 WL 870684, at *1 (W.D. Tenn. Mar. 31, 2006) ("Motions to strike are governed by Rule 12(f) . . . and are generally disfavored."), a motion to strike may seek to remove "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The key limitation is that it applies only to pleadings, which are limited to the materials listed in Fed. R. Civ. P. 7(a). None of those categories include motions for summary judgment or attached exhibits. Thus, Plaintiff cannot move to strike Defendants' motion for summary judgment and exhibits. *See Grose v. Lew*, No. 2:11–cv–02562–JDT–cgc, 2014 WL 3779082, at *9 (W.D. Tenn. July 30, 2014) (concluding that a motion to strike a motion for summary judgment was inappropriate under Rule 12(f)), *Rep. & Rec. adopted as modified on other grounds by* 2014 WL 4966319 (W.D. Tenn. Oct. 3, 2014); *Berkley v. Deutsche Bank Nat'l Trust Co.*, No. 2:12–cv–02642–JTF–cgc, 2014 WL 1795828, *2 (W.D. Tenn. May 6, 2014) (providing that exhibits to a motion for summary judgment are not susceptible to motions to strike).

As with his motion to compel, the substance of Plaintiff's motion to strike is better considered under Fed. R. Civ. P. 56(d): the gist of his request is that Defendants have ignored discovery requests that would provide necessary evidence for his claim. But even so construed, Plaintiff's motion fails, as it does not seek information that could raise a

genuine issue of material fact about any claims or defenses. Indeed, many of his arguments for striking are legally flawed or depend on requests for irrelevant information. (R. 37, ID.241-245.)

He first complains that Briggs has not responded to his discovery requests about her professional credentials. (R. 37, ID.241.) When she entered her appearance, Plaintiff "initiated his Acceptance of Appearance"—something he must have concocted, as no rule or even informal practice requires it[14]—under the condition that she give him

> a certified copy of her Oath of Office, Bond, Malpractice Insurance, License to practice law in Michigan, Certificate/Authorization to enter the bench and practice law before this district court for the United States, and corporate charter for her Firm . . . .
>
> In addition, Plaintiff also demanded a copy of the signed contract between her and each defendant she's representing, authorizing her presence on, or in behalf of those being represented by her.

(*Id.*) These documents, Plaintiff contends, are necessary for him "to protect his interest in this case and property involved, and have remedy just in case he is injured by counsel's actions during the course of these proceedings." (*Id.*) Also, they will ensure that Briggs has "clean hands." (*Id.*)

The demand fails for many reasons. Critically, the requested information has

---

[14] The Acceptance states that he "'ACCEPTS' your notice of appearance . . . without controversy," as long as she gave him the various materials mentioned in the text above. (R. 27, ID.188. His motion cites a few rules, apparently in relation to the "Acceptance," but none mention such a concept. *See* Fed. R. Civ. P. 26(a)(3) (providing for various mandatory pretrial disclosures concerning witnesses); Fed. R. Civ. P. 34(a)(1)(A)-(B) (permitting a party to request, from another party, documents and other objects); Fed. R. Civ. P. 34(c) (providing that requests for documents from non-parties can be compelled under Rule 45). His citation to Rule "5(3)"—which does not exist—probably should be to Rule 5(d)(3), dealing with electronic filings; in any event, nothing in Rule 5 requires or permits a party to "accept" the appearance of the other side's attorney.

nothing to do with any defenses that have been raised, so there is no reasonable chance that it could create a genuine issue of material fact. As such, Fed. R. Civ. Pl. 56(d) does not require the Court to delay the present motions for summary judgment.

The request also fails on the merits. For one thing, it was filed on the docket; Briggs says she was never served with any independent discovery requests. (R. 43, ID.319-320.) Federal Rule of Civil Procedure 5(d)(1), however, provides that interrogatories and requests for documents "must not be filed until they are used in the proceeding or the court orders filing." *See also* E.D. Mich. LR 26(a) (allowing discovery materials to be filed in circumstances not present here). Thus, the request was not properly made.

The clearest problem with the merits of the demand is that, even supposing it constituted some version of a recognized discovery request, it falls short of Rule 26's relevancy standard. As discussed, that rule limits discovery to materials relevant to a claim or defense. Briggs's pedigree is irrelevant to any conceivable aspect of this case. She is not named in the complaint, did not play any role in the underlying events, and there is no reason to think she has "unclean hands." As Plaintiff seems to admit, he wants to ready himself for claims he hypothetically—very hypothetically, *see Friedman v. Dozorc*, 412 Mich. 1, 16 (1981) (holding that "an attorney owes no duty of care to an adverse party in litigation")—might acquire in the future. His request is not even a fishing expedition for current claims but an attempt to cast a line in pond he knows is fishless. That is not how discovery works.

22

Plaintiff's second and third arguments are based on Defendants' answer his complaint within 21 days of service as required by Fed. R. Civ. P. 8 and 12. (R. 37, ID.242.) But they did not have to reply: 42 U.S.C. § 1997e(g) allows defendants to "waive the right to reply to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law." The waiver does not mean that the defendants admit the complaint's allegations. *Id.* Plaintiff's action fits the bill, as he is a prisoner challenging conditions of confinement. Therefore, Plaintiff is mistaken about Defendants' obligation to answer the complaint.

Plaintiff's final arguments—numbered four through six—are that defendants Bierstetel and Killough failed to respond to discovery requests. (R. 37, ID.243-245.) He wants to know whether they signed an oath of office, whether they must comply with the law and MDOC policy, and whether they seized and read his papers in contravention of that policy and various constitutional provisions. (R. 37, ID.247-259.) None of the questions relate to the defenses raised by Defendants. Any evidence that could be generated by this discovery, then, could not create a genuine issue of material fact relevant to Defendants' motions.

Therefore, he has not provided a reason under Fed. R. Civ. P. 56(d) to delay ruling on those motions. Because Defendants are entitled to summary judgment, Plaintiff's motions should be denied as moot.

## III.   CONCLUSION

For the reasons above, I conclude that Plaintiff's claims are time-barred and his

motions, construed under Fed. R. Civ. P. 56(d), do not suggest that relevant evidence remains to be discovered regarding timeliness. Accordingly, I recommend granting Defendants' motions for summary judgment based on the statute of limitations and denying Plaintiff's motions as moot.

## IV.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections

in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response

must specifically address each issue raised in the objections, in the same order, and labeled

as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 29, 2019                         S/ PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Ernest Joseph Davis #179886 at Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.

Date: March 29, 2019                          By s/Kristen Castaneda
                                              Case Manager